London R. KIRCHOFFNER, Plaintiff,

v.

UNITED STATES of America and Teddy D. Clutter, Defendants.

Civ. No. A4–89–235.

United States District Court,
D. North Dakota,
Northwestern Division.

May 17, 1991.

Donald L. Peterson, McGee, Hankla, Backes & Wheeler, LTD., Minot, N.D., for plaintiff.

Clare Hochhalter, Ass't U.S. Atty., Bismarck, N.D., for U.S.

Michael J. Morley, Morley & Morley, Grand Forks, N.D., for Teddy D. Clutter.

## ORDER

BENSON, Senior District Judge.

Plaintiff Kirchoffner brought this action under the Federal Tort Claims Act to recover for personal injuries and property damage that she claims she suffered when her vehicle was struck by a vehicle driven by defendant Teddy D. Clutter, an employee of the United States.

The matter is before the court on the United States' motion for summary judgment.[1] The United States contends that Clutter was outside the scope of his employment at the time of the collision and, therefore, the United States can not be held vicariously liable for Clutter's conduct under the Federal Tort Claims Act.

## FACTUAL BACKGROUND

Following a hearing, the court finds that there is no genuine dispute as to any material fact. The facts are: Defendant Clutter was a civilian employee of the United States Air Force Engineering and Services Center at Peterson Air Force Base in Colorado. On May 31, 1988, Clutter and a supervisor, Dave Peters, left Colorado on a temporary duty assignment to Fortuna, North Dakota. Clutter and Peters were authorized to stay in Williston, North Dakota, during the temporary duty assignment because Fortuna is such an isolated area. Williston is approximately sixty miles south of Fortuna.

Clutter and Peters arrived in Williston in a government vehicle on June 1, 1988, at approximately two-thirty in the afternoon. They checked into a hotel in Williston and Peters called it a day. After checking into their rooms and unpacking they met in the

hotel lounge, where Clutter had one beer. Clutter and Peters discussed where they would go for dinner. They had not eaten since breakfast. They had been in Williston before and had eaten at many of the restaurants in Williston, so they were looking for "something different." A "local" told them that there was a place approximately twenty-five miles east of Williston that served good food.

Clutter and Peters "freshened up" and headed east out of Williston in the government vehicle. Peters was driving. At some point in their trip they obtained a six pack of beer. Clutter had two beers while they were on the road.

The men never found the restaurant. However, after they had driven approximately twenty-five miles east of Williston, they came upon Tioga, North Dakota. They stopped at a place in Tioga where they watched a televised basketball playoff game and Clutter had three whiskey drinks. The men did not eat dinner, although they did have a bag of chips.

Later that night, the men left Tioga with Clutter at the wheel and Peters asleep in the back seat. Clutter states that he intended to return to Williston, but "[n]ot knowing the area and getting, being confused, [he] went east instead of west...." Clutter depo. at 37. Clutter states that when he realized he was driving in the wrong direction, he turned the vehicle around and proceeded west toward Williston. Clutter recalls that he drove west for a while and was a bit sleepy.

He collided with the vehicle driven by plaintiff Kirchoffner. The collision occurred between midnight and one o'clock approximately twenty-four miles east of Tioga. Except for the impact, Clutter does not recall the collision.

At the scene of the accident, Clutter told the investigating North Dakota Highway Patrol Officer that he was "disoriented." A blood alcohol test was administered. It

1. The United States' motion is entitled a motion "to dismiss or for summary judgment." Because matters outside the pleadings have been presented to and considered by the court, the motion will be treated as a motion for summary judgment. See Fed.R.Civ.P. 12(b).

revealed a .20% blood alcohol concentration and Clutter was charged with driving under the influence of alcohol.[2]

Clutter later resigned his employment with the United States. He stated that he resigned because he was "pretty confident they were going to fire [him]." Clutter depo. at 49.

## DISCUSSION

■ The Federal Tort Claims Act permits recovery against the United States for injuries caused by the negligent or wrongful conduct of a federal employee only if the employee was acting within the scope of his employment.[3] 28 U.S.C. §§ 1346(b), 2679. The United States contends Clutter was outside the scope of his employment at the time of the collision and requests dismissal of the complaint against it with prejudice. Clutter and plaintiff Kirchoffner resist the United States' motion. They contend that under North Dakota law, the question of scope of employment must be submitted to the fact-finder for determination.[4]

■ Whether an employee was acting within the scope of his employment is determined according to the law of the state in which the accident occurred. *See Robbins v. United States*, 722 F.2d 387, 388 (8th Cir.1983); *Wollman v. Gross*, 637 F.2d 544, 547 (8th Cir.1980). Although North Dakota law provides that scope of employ-

ment is primarily a question of fact, it also provides that "when the evidence concerning the question of whether or not an employee was in the course of his employment at the time of an accident is such that reasonable minds could draw but one conclusion therefrom then it becomes a matter of law for the court to pass upon." *Hoffer v. Burd*, 78 N.D. 278, 279, 49 N.W.2d 282, 285 (1951) (Syllabus by the Court, at ¶ 4).

Given the undisputed facts of this case, reasonable minds could draw but one conclusion as to whether Clutter was in the scope of his employment at the time of the collision. The court concludes as a matter of law that Clutter was on a frolic and detour and was outside the scope of his employment at the time of the accident.

■ A primary inquiry under North Dakota law is whether the servant was performing any act in furtherance of his master's business at the time of the accident. *Id.* at 291, 49 N.W.2d at 290 (quoting *Kohlman v. Hyland*, 54 N.D. 710, 716, 210 N.W. 643, 646 (1926)).[5] Clutter and plaintiff Kirchoffner argue that the only reason Clutter was in North Dakota was to serve his employer, the United States. They argue that the United States had not placed any restrictions on Clutter's activities or his use of the government vehicle while in North Dakota. They also argue that Clutter demonstrated an intent to serve his

---

**2.** Clutter was convicted of driving under the influence of alcohol in violation of section 39–08–01 of the North Dakota Century Code. He was sentenced in state court to thirty days in jail, with twenty-six days suspended for a period of one year. He was also placed on probation and ordered to report to a certified addiction counselor for an alcohol evaluation. The court also imposed a $400 fine and a $75 administrative fee.

**3.** If the employee was acting within the scope of his employment, suit against the United States is the exclusive remedy. 28 U.S.C. § 2679(b); *United States v. Smith*, —— U.S. ——, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

**4.** Clutter urges that the question of scope of employment be submitted to a jury. However, there is generally no right to a jury trial under the Federal Tort Claims Act. 28 U.S.C. § 2402; *United States v. Neustadt*, 366 U.S. 696, 701 n.

10, 81 S.Ct. 1294, 1297 n. 10, 6 L.Ed.2d 614 (1961).

**5.** *See also* Restatement (Second) of Agency § 228. Section 228 provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

employer by attempting to return to Williston from Tioga.

The court concludes as a matter of law that Clutter was not performing any act in furtherance of his master's business at the time of the accident. The accident occurred between midnight and one o'clock approximately fifty miles east of Williston—where Clutter had been authorized to spend the night. Clutter's blood alcohol concentration was twice the legal limit and he was charged with and convicted of driving under the influence of alcohol. Clutter's only stated purpose in leaving Williston was to find a place to have dinner—which he never did.

The court finds that Clutter abandoned his master's business for his own purposes. Furthermore, the court finds that Clutter had deviated so materially and substantially from the scope of his employment that his attempt to return to Williston can not reasonably be viewed as a re-entry into the scope of employment. *Cf.* Restatement (Second) of Agency § 237 ("A servant who has temporarily departed in space or time from the scope of employment does not re-enter it until he is again reasonably near the authorized space and time limits and is acting with the intention of serving his master's business.").

IT IS ORDERED that the United States' motion for summary judgment (doc. # 24) is granted. Judgment shall be entered for dismissal of plaintiff's complaint against the United States, with prejudice.

Plaintiff has not affirmatively alleged that jurisdiction of the court over the action against defendant Teddy D. Clutter is based on diversity of citizenship nor has he plead the $50,000, exclusive of interest and costs, jurisdictional requirement.

IT IS FURTHER ORDERED plaintiff's complaint against the defendant Teddy D. Clutter is dismissed without prejudice.